## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IMELDA CORONA,
       Plaintiff

       v.

CITY OF CHICAGO, Department of
Animal Care and Control, and JOSE
DEL RIO, in his individual capacity,
       Defendants

No. 21 CV 6777

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

Plaintiff Imelda Corona filed this action for monetary damages and injunctive relief against her employer, the City of Chicago, Department of Animal Care and Control, and her supervisor, Jose Del Rio, in his individual capacity, alleging that they violated both federal and state law by discriminating and retaliating against her after reporting that she was sexually assaulted by one of her co-workers. She asserts federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983, and state law claims under the State Officials and Employees Ethics Act and the Illinois Whistleblower Protection Act. Defendants have filed a partial motion to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

At all relevant times, Plaintiff was employed by Defendant City of Chicago in the Department of Animal Care and Control ("Department"). R. 12 ¶¶ 4, 30. Defendant Del Rio was Plaintiff's supervisor. *Id.* ¶ 6. During her employment, Plaintiff worked closely and on the same shift with an individual named Mr. Caballero. *Id.* ¶ 8.

Plaintiff's claims arise from an incident that occurred on February 4, 2018. *Id.* ¶ 7. On this date, Plaintiff states that she was sexually assaulted by Caballero outside of work hours. *Id.* ¶¶ 7-8. Plaintiff does not allege that she immediately reported the sexual assault to her employer or the police. *See id.* ¶¶ 9-10. However, about a year after the incident, on or around February 15, 2019, Plaintiff learned from a colleague that Del Rio had been informed of the sexual assault. *Id.* ¶ 10. Del Rio did not undertake any investigation or implement any disciplinary procedures against Caballero. *Id.* ¶ 11. Rather, he continued to place Plaintiff and Caballero on the same shift, thereby requiring them to have one-on-one interaction. *Id.*

Plaintiff was not Caballero's only alleged victim. *Id.* ¶¶ 14, 72. Rather, Plaintiff alleges that Caballero sexually assaulted another female employee who worked in the Department. *Id.* ¶ 14. Plaintiff states that once Del Rio learned that she was aware that he knew about the sexual assault, he became upset and would ignore her at all costs. *Id.* ¶ 13. He also began to disparage Plaintiff to her co-workers. *Id.*

---

[1] For purposes of this motion, the Court accepts as true Plaintiff's factual allegations and draws all reasonable inferences in her favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

On February 18, 2019, Plaintiff and the other female employee reported their respective sexual assaults to the City's Equal Employment Opportunity ("EEO") Division within the Department of Human Resources. *Id.* ¶ 14. Three days later, the two went to the Chicago Police Department ("CPD") to file a police report against Caballero. *Id.* ¶ 15. Plaintiff states that she was motivated to file a police report not only to deter Caballero from any further criminal activity, but also out of a concern for the safety of the public given that he had sexually assaulted multiple people. *Id.* ¶¶ 72-73.

Plaintiff's sexual assault became a widely discussed topic at work. *Id.* ¶ 19. Del Rio openly discussed the assault with Plaintiff's co-workers, and he and another colleague, Francis Watson, began to retaliate against her. *Id.* ¶¶ 16, 20. On February 26, 2019, Plaintiff spoke with human resources ("HR") about Del Rio and Watson's retaliation. *Id.* ¶ 16. Despite her report, the two continued to disparage her, call her derogatory names, and tell co-workers that she was "ruining their lives." *Id.* ¶ 20.

As the information about the sexual assault and resulting investigation became more widespread, other co-workers joined in on the harassment. *Id.* ¶¶ 19, 21-23. They would tell Plaintiff that the sexual assault was "grown folk business" and insinuate that it was her fault for putting herself in a situation to be assaulted. *Id.* ¶ 21. The office became hostile toward Plaintiff, blaming her for causing tension in the workplace and for losing certain privileges, like bowling night. *Id.* ¶ 22. Some co-workers also started placing derogatory pictures and memes in the dispatch room that referenced people "snitching." *Id.* ¶ 23. Despite her report to HR, Plaintiff was

3

forced to face her harassers every day. *Id.* ¶¶ 24-25. Del Rio also continued to place Plaintiff on the same shift as Caballero. *Id.* ¶ 24.

On April 8, 2019, two months after Plaintiff initially reported the sexual assault, she gave a statement regarding Caballero's conduct to the City's Office of Inspector General ("OIG"). *Id.* ¶¶ 17, 84, 92. Caballero was eventually terminated in October 2020. *Id.* ¶ 26.

On March 9, 2021, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging harassment and retaliation in violation of Title VII and the Illinois Human Rights Act. *Id.* ¶ 28; R. 1-1. Despite Caballero's termination and the filing of the Charge, the harassment and retaliation at work persisted. R. 12 ¶ 29. For example, in June 2021, Plaintiff overheard Del Rio once again discussing the sexual assault with other employees and telling them that Plaintiff had ruined his life. R. 12 ¶¶ 30-31. Due to the continued harassment, Plaintiff decided to leave her employment with the Department the following month. *Id.* ¶ 30.

On September 24, 2021, the EEOC issued Plaintiff a Notice of Right to Sue. *Id.* ¶ 32; R. 1-2. Plaintiff then brought this suit against the Defendants. R. 1. She amended her original complaint pursuant to this Court's March 9, 2022, scheduling order. R. 11. The First Amended Complaint ("FAC") alleges that Defendants discriminated against and harassed Plaintiff because of her sex in violation of Title VII (Count I) and the Equal Protection Clause of the Fourteenth Amendment (Count III). R. 12 at 5-6, 7-8. She further alleges that Defendants retaliated against her in

violation of Title VII (Count II), deprived her of her First Amendment rights (Count IV), and retaliated against her in violation of the State Officials and Employees Ethics Act ("Illinois Ethics Act") (Count V) and the Illinois Whistleblowers Protection Act ("IWA") (Count VI) for reporting Caballero's sexual assault and the harassment that followed. *Id.* at 6-7, 8-11. Plaintiff seeks monetary and injunctive relief on all counts. *Id.* at 11-12.

Defendants have filed a partial motion to dismiss the FAC under Rule 12(b)(6). R. 23. The Court now addresses the merits of their motion.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). In evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts and draws all reasonable inferences in the light most favorable to the plaintiff. *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice" to withstand a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran*, 828 F.3d at 599 (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).

5

## ANALYSIS

Defendants seek partial dismissal of the FAC on the following grounds: (1) certain events covered by Plaintiff's Title VII claims are time-barred; (2) Plaintiff's speech is not constitutionally protected because it did not address a matter of public concern; (3) an individual cannot be held liable under the IWA; and (4) the Illinois Ethics Act does not apply because the City of Chicago is not a state agency and Del Rio is not a state employee. R. 22 at 3-10. The Court addresses each of their arguments in turn.

### I. TIMELINESS OF TITLE VII CLAIMS

Defendants first argue that Plaintiff's Title VII claims (Count I and II) include acts that were allegedly committed outside of the applicable limitations period and therefore should be dismissed as time-barred. *Id.* at 3-4.

A statute of limitations defense is generally not properly raised in a motion to dismiss because it is an affirmative defense, and the plaintiff "need not anticipate and attempt to plead around defenses" in the complaint. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014). Nonetheless, dismissal is appropriate where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

The parties agree that Section 2000e-5(e)(1)'s charge-filing provision governs Plaintiff's Title VII claims. A plaintiff in Illinois who wishes to bring a Title VII claim must first file an administrative charge with the EEOC within 300 days of the

allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 463 (7th Cir. 2016); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Failure to file a charge within that time renders the claim untimely. *Boston*, 816 F.3d at 463.

Defendants argue that because Plaintiff filed her EEOC charge on March 9, 2021, any discrete act of discriminatory or retaliatory conduct that occurred more than 300 days prior to this date, *i.e.*, acts that occurred on or before May 13, 2020, are time-barred. R. 23 at 4. In response, Plaintiff contends that her Title VII claims are based, not on discrete acts, but on a continuing violation. R. 29 at 2. Whether Plaintiff's sex discrimination and retaliation claims can rest on pre-May 13, 2020, conduct thus turns on whether the continuing violation doctrine applies to her claims.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that the continuing violation doctrine does not apply to "discrete" and easily identifiable acts, such as termination, failure to promote, or refusal to hire, even if those acts are related to earlier discriminatory or retaliatory acts over a continuous period. *Id.* at 110-14. Instead, each discrete act is a "separate actionable unlawful employment practice" that starts a new 300-day clock for filing an administrative charge. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 723-24 (7th Cir. 2004) (citing *Morgan*, 536 U.S. at 113-14). Any discrete acts that fall outside the limitations period are time-barred, even when they relate to acts that are alleged in a timely-filed charge. *Id.* at 723 (citing *Morgan*, 536 U.S. at 112-13).

7

Discrete acts stand in contrast to acts that contribute to a hostile work environment. *Id.* at 724. Such acts, by "[t]heir very nature involve[] repeated conduct" that "occurs over a series of days or perhaps years." *Morgan*, 536 U.S. at 115. Unlike discrete acts, hostile work environment claims "are based on the cumulative effect of individual acts" and "therefore cannot be said to occur on any particular day." *Id.*; *see also Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898-99 (7th Cir.) ("[T]he theory is that [a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'") (internal quotation marks and citations omitted) (alterations in original). In such cases, the continuing violation doctrine applies. *Id.* Under the continuing violation doctrine, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

Defendants contend that Plaintiff cannot plausibly invoke the continuing violation doctrine because she has not alleged a hostile work environment claim. R. 36 at 1-2. But the failure to "identify a legal theory … is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *see also Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (per curiam) (Wood, J., dissenting) ("plaintiffs are not required to plead legal theories"). Rather, courts look to the facts alleged—not the label given to each count in the complaint—when

determining whether the plaintiff has adequately presented the legal and factual basis for a given claim. *Senalan v. Curran*, 78 F. Supp. 3d 905, 909 (N.D. Ill. 2015). For this case, my task is to look at Plaintiff's factual allegations and "determine whether the acts about which [she] complains are part of the same actionable hostile work environment practice." *Lucas*, 367 F.3d 724 (citing *Morgan*, 536 U.S. at 120).

Here, the FAC plausibly states Title VII sex discrimination and retaliation claims under a hostile work environment theory. According to the FAC, the acts contributing to the hostile work environment began sometime after Del Rio became aware that Plaintiff knew that he knew about Caballero's sexual assault and lasted until Plaintiff decided to leave the Department a little over two years later. R. 12 ¶¶ 13, 30. During this time, Plaintiff alleges that Del Rio and other co-workers repeatedly subjected her to harassment and discrimination on the basis of her sex—including calling her derogatory names, disparaging her, posting threatening memes in the office, and making demeaning commentary about the sexual assault and resulting investigation. These cumulative acts plausibly state a sex discrimination claim based on a hostile work environment. *See Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F.3d 797, 801 (7th Cir. 2008) ("Sexual harassment serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event.").

Plaintiff's retaliation claim is similarly based on repetitive, continuing instances of offensive conduct—including being routinely told she was ruining lives, being blamed for the tension in the workplace after reporting the sexual assault, and

being subjected to hostility for causing the loss of certain work privileges like bowling night. At this stage of proceedings, it is plausible that these repeated instances of disparagement, harassment, and hostility rise to the level of a "hostile or abusive working environment" that would "cause a reasonable worker to think twice about complaining about" a sexual assault in the Department. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) (holding the "litany of malfeasance" that plaintiff alleged in the complaint, including "screaming, false disciplinary reports, mistreatment of her daughter, exclusion from social functions, [and] denial of time off," was sufficient to state both Title VII retaliation and hostile work environment claims).

The Court therefore concludes that Plaintiff has sufficiently plead that the alleged discriminatory and retaliatory acts that she wishes to challenge arise from the "same hostile work environment practice." *Lucas*, 367 F.3d at 724. And because Plaintiff alleges that the latest of these acts—when Del Rio disclosed details about the sexual assault to City employees and told them that Plaintiff had ruined his life— occurred within the applicable limitations period in June 2021, she has plausibly alleged that the continuing violation doctrine applies to her Title VII claims. *See Langer v. Bd. of Educ. of the City of Chi.,* No. 11 CV 5226, 2013 WL 5646673, at *5 (N.D. Ill. Oct. 16, 2013) ("To succeed under a continuing violation theory, [the plaintiff] must demonstrate that the acts of alleged discrimination are part of an ongoing pattern of discrimination and that at least one of the alleged discrete acts of discrimination occurred within the relevant limitations period.").

For the reasons discussed above, the Court cannot conclude at this stage of proceedings that any of the discriminatory or retaliatory acts that form the basis of Plaintiff's Title VII claims are time-barred. Defendants' motion to dismiss Counts I and II in part is therefore denied.

## II.    FAILURE TO STATE A CLAIM

In addition to their timeliness argument, Defendants argue that Plaintiff has failed to state a claim upon which relief may be granted for her federal retaliation claim under the First Amendment (Count IV), and her state retaliation claims under the Illinois Ethics Act (Count V) and the IWA (Count VI). R. 23 at 4-7, 9-10. The Court next considers whether the allegations in the FAC are sufficient with respect to each of these claims.

### A.    Plaintiff's First Amendment Claim (Count IV)

In Count IV, Plaintiff raises a First Amendment claim pursuant to 42 U.S.C. § 1983 against Del Rio, alleging that he retaliated against her for reporting the sexual assault and workplace harassment to internal and external investigatory entities. R. 12 at 8-9. Defendants argue that Plaintiff's reports do not constitute constitutionally-protected speech and her claim should therefore be dismissed. R. 23 at 4-7.

To state a First Amendment retaliation claim, the plaintiff must allege that: (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017).

11

Where, as here, the plaintiff is a public employee, the threshold question is whether the employee's speech was constitutionally protected. *Ulrey v. Reichhart*, 941 F.3d 255, 259 (7th Cir. 2019). A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; (2) addressed a matter of public concern; and (3) the employee's interest in expressing the speech was not outweighed by the state's interest as an employer in promoting effective and efficient public service. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). In their motion to dismiss, Defendants challenge only the second of the above elements—that is, whether Plaintiff has sufficiently pled that her speech addressed a matter of public concern. R. 23 at 4-7.

Whether a statement is a matter of public concern is a question of law. *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2010). As the Supreme Court has explained, "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interests; that is, a subject of general interest and of value to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011). To determine whether an employee's speech addresses a matter of public concern, courts employ the *Connick* test. *Kubiak v. City of Chi.*, 810 F.3d 476, 482-83 (7th Cir. 2016) (citing *Connick v. Myers*, 461 U.S. 138 (1983)).

Under the *Connick* test, courts must look at "the overall objective or point of the speech" as determined by the "content, form, and context of a given statement." *Id.* (citing *Connick*, 461 U.S. at 147-48). The motive of the speaker is relevant as part

12

of the context, but the content of the speech is the most important of the three factors. *Id.* at 483. The ultimate question is "whether the objective of the speech—as determined by content, form, and context—was to 'bring wrongdoing to light' or to 'further some purely private interest.'" *Id.* (quoting *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 985 (7th Cir. 2013) ("*Kristofek I*")).

The FAC alleges at least four instances in which Plaintiff engaged in speech: (1) when she reported the sexual assault to the City's EEO Division; (2) when she filed a police report regarding the sexual assault with CPD; (3) when she reported Del Rio and Watson's retaliatory treatment to HR; and (4) when she gave a statement to the City's OIG about the sexual assault. R. 12 ¶¶ 14-17. Defendants argue that none of these acts of speech address a matter of public concern because all but one of the reports were made internally, and the reports' content and context demonstrate that they were made only to further Plaintiff's personal safety. R. 23 at 6.

The Court first addresses Plaintiff's HR complaint. Plaintiff states that her report to HR concerned only Del Rio and Watson's retaliation. R. 12 ¶ 16. Significantly, the FAC contains no allegations that Plaintiff discussed Caballero's sexual assault with HR. *See generally id.* This leads to the inference that the objective of Plaintiff's HR complaint was only to put a stop to the name-calling, meme-posting, and other forms of harassment that she was experiencing at work, and not to bring to light a matter of public concern. *See Carter v. Ill. Gaming Bd.,* No. 18 C 7039, 2020 WL 1639914, at *4 (N.D. Ill. Apr. 2, 2020) ("where … a government employee complains that a fellow employee, in connection with workplace interactions, treated

13

her in an improper manner, the speech does not qualify as a matter of public concern"). Such an inference is further supported by the fact that the FAC alleges that Plaintiff only reported Del Rio and Watson's retaliation to HR and did not escalate it any further. *See Bivens*, 591 F.3d at 561 ("Although the fact that the speech was entirely internal does not itself render the speech unprotected …, this fact does suggest that the grievance was personal in nature.").

Although sexual harassment is indeed an important matter that can be of public concern, purely personal grievances, such as this, do not garner First Amendment protection. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 706 (7th Cir. 2010). The Court therefore finds that the FAC fails to allege that Plaintiff's HR complaint to remedy Del Rio and Watson's retaliatory treatment involved a matter of public concern. *See Barth v. Vill. of Mokena*, No. 03 C 6677, 2004 WL 434195, at *3 (N.D. Ill. Feb. 25, 2004) (holding that plaintiff's complaint to supervisors did not touch upon a matter of public concern because it was based on her own experiences and was motivated by desire to stop the harassment and discrimination).

In contrast, Plaintiff has plausibly stated a First Amendment retaliation claim based on her reports to the City's EEO, OIG, and CPD about the sexual assault. Unlike Plaintiff's HR complaint, which related solely to fellow employees' inappropriate name-calling and harassment at work, the EEO, OIG, and CPD reports involved the alleged criminal activity of Caballero with whom Plaintiff was required to work with on a daily basis despite Del Rio's knowledge of the sexual assault. R. 12 ¶¶ 7-8, 10-11. Further, the FAC contains allegations that support the inference that

14

the content of Plaintiff's speech was much more than simply a personal grievance about her co-worker; rather, Plaintiff states Caballero sexually assaulted another female employee within the Department and, together, the two of them escalated information about the criminal misconduct to higher authorities—including the police—to have the situation properly addressed. R. 12 ¶¶ 11, 14-15, 25. Such allegations make it plausible that Plaintiff's reports were intended to address a greater concern for the protection of the public or, at the very least, other women within the Department. *See Kessel v. Cook Cnty.,* No. 00 C 3980, 2001 WL 826914, at *4-5 (N.D. Ill. July 12, 2001) (allowing First Amendment retaliation claim to proceed where plaintiff alleged that she filed her EEOC charge "not only out of concern for her own plight, but also out of concern for other women in the Sheriff's Department"); *see also Johnson v. Unified Sch. Dist. 507, Haskell Cnty., Kan.*, 580 F. Supp. 3d 999, 1009 (D. Kan. 2022) ("Generally, the pursuit of criminal charges or allegations of serious misconduct are matters of public interest and concern.").

Defendants contend that, like the HR complaint, Plaintiff's reports regarding the sexual assault were purely personal in nature for the purpose of protecting her own safety. R. 23 at 6-7. In support of this argument, they point to the police report attached to their motion to dismiss wherein Plaintiff states that she decided to report the sexual assault because "something happened at work." *Id.* at 7; R. 23-2 at 15.

Although the Court may consider the police report because it is referred to in Plaintiff's complaint and is central to her claim, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), I must still draw all reasonable inferences

15

in her favor. *Michon v. Ugarte*, No. 16 C 6104, 2017 WL 622236, at *3 (N.D. Ill. Feb. 15, 2017). The Court is not persuaded by Defendants' argument that the absence of an explicit reference to public safety in the police report defeats Plaintiff's First Amendment retaliation claim as a matter of law, particularly when the narrative of a police report is subject to the author's discretion. *Cf. id.* (explaining police report is not a proper subject for judicial notice because it is "not a source of indisputable accuracy"). Even if the vague reference to "something happen[ing] at work" could be construed as relating only to Plaintiff, personally, "a public employee's speech may still be protected if the speaker's motives were mixed and also included a desire to help the public." *Kristofek I*, 712 F.3d at 984.

Defendants also argue that the form of Plaintiff's speech, specifically with respect to the City's EEO and OIG, demonstrates that it is not a matter of public concern because such reports are part of the City's internal channels for reporting instances of misconduct. R. 36 at 2-3. Contrary to Defendants' argument, however, courts in this District have held that speech directed at the City's OIG is an external report that falls "outside established [reporting] channels." *McDonald v. Yarbrough*, No. 22 CV 2143, 2023 WL 2745267, at *6 (N.D. Ill. Mar. 31, 2023). In any event, as mentioned above, the "fact that speech was entirely internal does not itself render the speech unprotected." *Bivens*, 591 F.3d at 561. Unlike the single harassment complaint to HR, Plaintiff escalated her sexual assault report first to the City's EEO, and then to CPD, and then gave a statement to the City's OIG. The fact that Plaintiff reported the sexual assault to outside agencies furthers the inference that "she was

16

promoting a public interest." *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, No. 21 C 0336, 2022 WL 393572, at *7 (N.D. Ill. Feb. 9, 2022); *see also Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 795 (7th Cir. 2016) ("*Kristofek II*") ("By reaching out first to Johnston and Ricobene and then to the FBI, Kristofek explicitly and formally sought to alert a greater audience of the possible harm at issue.")

Putting together and accepting as true Plaintiff's allegations, the FAC plausibly states a First Amendment retaliation claim based on her reports about the sexual assault to the City's EEO, CPD, and OIG. Plaintiff's First Amendment retaliation claim may therefore proceed as to these reports. Defendants' motion to dismiss Count IV is granted in part, with respect to Plaintiff's HR complaint concerning workplace retaliation, and denied in part, with respect to Plaintiff's reports about the sexual assault to the City's EEO, OIG, and CPD.

## B. Plaintiff's Illinois Ethics Act Claim (Count V)

Next, Plaintiff alleges that Defendants violated the Illinois Ethics Act, specifically its whistleblower protection section, 5 ILCS 430/15-10. R. 12 at 9-10. Defendants argue that this claim must be dismissed because the Illinois Ethics Act does not apply to either the City of Chicago or Del Rio. R. 23 at 9-10.

The Illinois Ethics Act protects whistleblowers by prohibiting "[a]n officer, a member, a State employee, or a State agency" from retaliating against "a State employee" after he or she "[d]iscloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation." 5 ILCS 430/15-10(1).

17

Plaintiff has not plausibly stated an Illinois Ethics Act violation as to the City. To bring an actionable claim under the Illinois Ethics Act, Plaintiff must be a "State employee," and Defendants must be "[a]n officer, a member, a State employee, or a State agency." *Marsden v. Kishwaukee Cmty. Coll.*, 572 F. Supp. 3d 512, 527 (N.D. Ill. 2021). Plaintiff claims that the City is a "State agency," R. 29 at 5-6, but that is not the case. The Illinois Ethics Act lists several entities that qualify as a "State agency" within the meaning of the statute, but it specifically excludes "units of local government"—

> 'State agency' includes all officers, boards, commissions and agencies created by the Constitution, whether in the executive or legislative branch; ... and administrative units or corporate outgrowths of the State government which are created by or pursuant to statute, *other than units of local government* (including community college districts) and their officers, school districts, and boards of election commissioners; ...

5 ILCS 430/1-5 (emphasis added). Under the Constitution of the State of Illinois, "units of local government" include municipalities. Ill. Const. art. VII, § 1. And "municipalities" include "cities, villages and incorporated towns." *Id.* Thus, the City of Chicago is a unit of local government and, consequently, does not qualify as a "State agency" within the meaning of the Illinois Ethics Act. *See City of Chi. v. Roman*, 705 N.E.2d 81, 86 (Ill. 1998) ("The City [of Chicago] is a home rule unit of local government under the 1970 Illinois Constitution."); *see also Falkner v. City of Chi.*, 150 F. Supp. 3d 973, 979 (N.D. Ill. 2015) ("The Illinois Constitution treats local government units and state agencies as separate entities ...").

18

Plaintiff's Illinois Ethics Claim against Del Rio fails for the same reason. The FAC alleges that Del Rio is an "officer" or an "employee" within the meaning of the Act. R. 12 ¶ 81. But an "officer" is defined as "an executive branch constitutional officer or a legislative branch constitutional officer." 5 ILCS 430/1-5. Del Rio is neither. *See* R. 12 ¶ 6. And because the City of Chicago is not a "State agency," Del Rio does not fall within the definition of "State employee," either. *See* 5 ILCS 430-1-5 (defining "State employee" as "any employee of a State agency").

Because neither the City nor Del Rio are "State agenc[ies]" or "State employ[ees]," the Illinois Ethics Act does not apply. *See Marsden*, 572 F. Supp. 3d at 528 ("Simply put, the whistleblower protection in § 15-10 does not protect employees of [units of local government]"). Defendants' motion to dismiss Count V is granted.

### C. Plaintiff's IWA Claim against Del Rio (Count VI)

Finally, Plaintiff alleges that Defendants violated the IWA when they retaliated against her for reporting the sexual assault to CPD and to the City's OIG. R. 12 ¶¶ 92-94. Defendants argue that this claim must be dismissed as to Del Rio because an individual employee cannot be held liable under the IWA. R. 23 at 7-8.

The IWA prohibits an employer from retaliating against an employee who discloses "information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law …" 740 ILCS 174/15(b). As amended in 2008, the IWA defines "employer" to include "any person acting within the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5.

19

Courts within this District are split as to whether the IWA imposes liability on individual employees like Del Rio. *See Wheeler v. Piazza*, 364 F. Supp. 3d 870, 884 (N.D. Ill. 2019) (collecting cases). Those holding that the IWA does not give rise to individual liability have reasoned that the Act contains language similar to that of federal antidiscrimination statutes, such as Title VII, wherein the definition of "employer" is "simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents." *Patton v. Rhee*, No. 20 C 00076, 2022 WL 865835, at \*5 (N.D. Ill. Mar. 23, 2022); *see also Parker v. Ill. Hum. Rts. Comm'n*, No. 12 C 8275, 2013 WL 5799125, at \*9 (N.D. Ill. Oct. 25, 2013). A majority of courts in this District, however, have held to the contrary, concluding that the "unambiguous and plain language of the IWA" allows for individual liability on individual agents acting on behalf of their employer. *Conway v. City of Chi.*, No. 20 C 4966, 2021 WL 4206793, at \*11 (N.D. Ill. Sept. 16, 2021); *see also Phelps v. Ill. Dep't. of Corr.*, 22 C 932, 2023 WL 4029896, at \*10 (N.D. Ill. June 15, 2023); *Van Pelt v. Bona-Dent, Inc.*, 17 C 1128, 2018 WL 2238788, at \*6 (N.D. Ill. May 16, 2018).

This Court agrees with the majority approach and holds that the plain language of the IWA allows for individual liability. "[T]he fundamental rule" of Illinois statutory interpretation "is to ascertain and give effect to the legislature's intent" which is best expressed through the "statutory language, given its plain and ordinary meaning." *Gen. Motors Corp. v. Pappas*, 950 N.E.2d 1136, 1146 (Ill. 2011). Where the "meaning of a statute is plain on its face, no resort to other tools of statutory construction is necessary." *Id.*

Here, the plain language of the IWA allows for the imposition of liability on individual agents, like Del Rio. To hold otherwise would conflict with the statute's unambiguous language. Defendants' motion to dismiss Count VI against Del Rio is therefore denied.

**CONCLUSION**

Defendants City of Chicago, Department of Animal Care and Control, and Jose Del Rio's partial motion to dismiss, R. 23, is granted in part and denied in part. The Court dismisses with prejudice Plaintiff Imelda Corona's State Officials and Employees Ethics Act claim (Count V) in its entirety, and her First Amendment retaliation claim (Count IV) to the extent that it is premised on the February 26, 2019, HR complaint. Counts I, II, VI, and the remaining allegations in Count IV concerning Plaintiff's sexual assault reports, may proceed. Defendants will have 14 days to amend their answers to the First Amended Complaint.

Date: 8/31/2023

_____
JEREMY C. DANIEL
United States District Judge