# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IMELDA CORONA,<br>            Plaintiff<br><br>    v.<br><br>CITY OF CHICAGO and JOSE DEL RIO,<br>            Defendants | No. 21 CV 6777<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Imelda Corona sued Defendant City of Chicago (the "City") and her former supervisor at Chicago Animal Care and Control ("CACC"), Defendant Jose Del Rio. (R. 12.)[1] She alleges that she was subject to sexual harassment leading to a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, (Count I), retaliation in violation of Title VII (Count II), violations of the Fourteenth Amendment's Equal Protection Clause on the basis of sex pursuant to 42 U.S.C. § 1983 (Count III), First Amendment retaliation pursuant to 42 U.S.C. § 1983 (Count IV), and retaliation in violation of the Illinois Whistleblower Protection Act ("IWA"), 740 ILCS 174/15 (Count VI). (*Id.*)[2] Before the Court is the defendants' motion for

---

[1] For ECF filings, the Court cites to the page numbers set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate. For documents filed under seal, the Court cites the sealed version of the documents while attempting not to reveal any information that could be reasonably deemed confidential. Confidential information is discussed to the extent necessary to explain the path of the Court's reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010).

[2] Corona's Retaliation in Violation of State Officials and Employees Ethics Act claim was previously dismissed. (R. 87.)

summary judgment.[3] For the reasons discussed below, the defendants' motion is granted. In addition, because summary judgment is proper in favor of the defendants', Corona's Motion to Judicially Estop Defendant City of Chicago (R. 70) is denied as moot.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements, the materials cited therein, and other aspects of the record in this case.[4] The Court "must credit [Corona's] version and draw all reasonable inferences in her favor because [s]he is the party opposing summary judgment." *Tolliver v. City of Chicago*, 820 F.3d 237, 239 (7th Cir. 2016).

Corona was employed by the CACC as an Animal Control Officer ("ACO") from March 2014 until July 2021. (Pl.'s SOF at 3, ¶¶ 1–2.) The CCAC is operated by the City. (*Id.* at 1, ¶ 1.) As an ACO, Corona's job duties included "capturing stray,

---

[3] At the very end of her response brief, Corona requests that the Court grant summary judgment on her Title VII sex discrimination hostile work environment claim, and for "creating a retaliatory hostile work environment under Title VII and the Illinois Whistleblower Act." (R. 135 at 35.) However, Corona did not file a cross-motion for summary judgment. Therefore, the Court only considers the defendants' motion for summary judgment and Corona's filing as the opposition to that request for summary judgment. *See* Fed. R. Civ. P. 56(a) (requiring the court to grant summary judgment only where the party moves under Rule 56(a) and "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law . . . district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

[4] *See* Defendants' Rule 56.1 Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment (R. 124) ("Defs.' SOF"); Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts and Plaintiff's Statement of Material Facts (R. 138 at 1, 40) ("Pl.'s SOF") (note that Corona's response and own statement of facts are contained in the same document); and Defendants' Response to Plaintiff's Statement of Additional Material Facts (R. 149) ("Defs.' SOAF").

unlicensed, injured or controlled animals using various restraining devices and driving department vehicles to transport animals to and from the ACC Center." (*Id.* at 20, ¶ 22.) ACOs are scheduled to work in three shifts: 7:00 a.m. to 3:00 p.m.; 2:30 p.m. to 10:30 p.m.; and 11:00 p.m. to 7:00 a.m. (R. 124-4 ("Corona Dep.") at 18:11–19:12.) Also employed by the CCAC is Del Rio; his employment began with the CCAC in 1990 and he was promoted to ACO Supervisor in 2014. (Pl.'s SOF at 1, ¶ 2.) Del Rio was Corona's supervisor during the events relevant to this lawsuit. (R. 136-6 at 13:22–25.) As a Supervisor, one of Del Rio's responsibilities was to set "beat assignments" for the ACOs, (Pl.'s SOF at 34, ¶ 62); in other words, he determined where an ACO would work in the City on a given day. (Corona Dep. at 109:14–110:3.)

## I. THE ASSAULT

On February 3, 2018, outside of work hours, Corona and three other ACOs, Jose Caballero, Joseph Bazal, and Yvonne Silva, went to a bar in the Wicker Park neighborhood of Chicago. (Pl.'s SOF at 20, ¶ 24.) After their night out, Corona and Caballero stayed overnight at Silva's apartment. (*Id.* at 20, ¶ 25.) While at Silva's, in the early hours of February 4, 2018, Caballero sexually assaulted Corona. (*Id.*)

Over the next year, Corona described the February 4th assault to several of her co-workers. (*Id.* at 21, ¶ 27.) During this time, Corona did not report the sexual assault to the CCAC. (*Id.* at 23, ¶ 31.) She did, however, request that she not work with Caballero on the same shift; after February 4, 2018, Corona and Caballero worked together twice: once on a full shift, and once "for a partial day when they had

to retrieve a fleet vehicle to use for work purposes." (*Id.* at 22, ¶ 28.) Once Corona requested not to work with Caballero, they did not work together again. (*Id.*)

On February 13, 2019, ACO Inspector Cheryl Edgecombe learned from CCAC Dispatcher Francis Watson that Watson had heard from Del Rio that Caballero and Corona could not work together because Corona "accused Caballero of sexual assault." (*Id.* at 22, ¶ 29.) Edgecombe relayed this to Corona. (*Id.* at 23, ¶ 30.) On February 19, 2019, Corona reported Caballero's sexual assault on her to the City's Equal Employment Opportunity ("EEO") Division. (*Id.* at 23, ¶ 31 (citing Corona Dep. at 50:21–24).) That report was referred to the Office of Inspector General ("OIG") for investigation. (*Id.* at 23 ¶ 32.) On February 22, 2019, Corona reported the February 4, 2018 assault to the Chicago Police Department ("CPD"). (*Id.* at 24, ¶ 34.)

## II. THE AFTERMATH OF THE ASSAULT

Over the next two years, Corona asserts that her coworkers allegedly harassed her. First, on February 25, 2019, CCAC employee, Marstine Crayton posted a meme in the dispatch area at the office that read "HOW I LOOK AT MY COWORKERS ONCE I FOUND OUT THEY SNITCH." (*Id.* at 24, ¶ 36.) The next day, on February 26, 2019, Corona met with Susan Cappello, (*id.* at 25, ¶ 37), who at the time was the CACC's Human Resources Business Partner. (*Id.* at 18, ¶ 19.) During the meeting, Corona informed Cappello about the sexual assault, the police report with the CPD, and "that the matter was being discussed by her coworkers." (*Id.* at 25, ¶ 37.) Corona also told Cappello about the meme posted by Crayton, though at the time she did not know who had posted it; Corona believed the meme was targeted at her because she

4

saw it after returning from a meeting with the City's Employee Assistance Program. (*Id.* at 24–26, ¶¶ 36–37, 40.) Cappello advised Corona to report the meme to the EEO Division, which she did that same day. (*Id.* at 25, ¶ 38.) The meme was taken down shortly thereafter. (*Id.*) In or around March or April 2019, Watson posted a meme in the office which said something about "snitches get[ting] stitches." (Defs.' SOAF at 24, ¶ 24.) It is disputed whether this meme was posted about Watson's YouTube watching habits at work, or Corona. (*Id.*; *see also* Pl.'s SOF at 26–27, ¶ 41.)

In addition, starting around April 2019, Corona, Bazal, and Pfeffer stopped attending the CCAC's bowling nights. (Pl.'s SOF at 27, ¶ 43.) ACO John Allison purportedly said to Bazal, outside of Corona's presence, that he was upset that they could no longer have bowling nights "because of everything that was going on at work." (*Id.* at 27, ¶ 42.) Allison also allegedly said to Pfeffer, sometime after April 2019, that Corona was "only calling her encounter with Caballero 'rape' because she regretted it," (*Id.* at 27, ¶ 44), and that "what Corona and Caballero had done was 'grown folks business.'" (*Id.* at 28, ¶ 45.) There is a factual dispute as to whether Allison's latter comment regarding "grown folks business" was related to Corona; Corona admitted this comment could have been related to another co-worker. (*Id.* at 28, ¶ 46.) According to Corona, Allison also commented directly to her sometime "towards the end of her employment with CACC" that "what happens between adults should be handled." (*Id.* at 29, ¶ 47 (citing Corona Dep. 73:22–74:4).)

Further, according to Corona, approximately every other week between 2019 and 2020, Corona would approach groups of her co-workers, and they would abruptly

stop talking. (*Id.* at 31, ¶ 51.) Though Corona did not know what her co-workers were talking about, she "assumed" they "were talking about her because they would stop talking when she approached and then disperse." (*Id.*) Del Rio was sometimes a participant in these groups. (*Id.*) Corona and Del Rio never discussed the February 4, 2018 assault directly. (*Id.* ¶ 52.)

Also, between 2019 and 2021, Del Rio told Pfeffer that Corona was "ruining his life." (*Id.* at 31, ¶ 53.) It is not clear how many times Del Rio made this statement; Corona testified that it happened "less than five times" (*id.* (citing Corona Dep. 82:17–83:8)); Pfeffer testified it happened once, (*id.* (citing R. 124-10 ("Pfeffer Dep.") at 41:19–42:10, 44:4–11), but authored a declaration where she stated that Del Rio complained how Corona was ruining his life, saying things like "why is she doing this to me" and "why is she making this up?" (R. 134-6 ¶ 8 (quotations omitted).)

Throughout this time, Del Rio also allegedly would stare at Corona with a "serious face" during roll call for the ACOs. (Pl.'s SOF at 33–34, ¶¶ 60–61.) According to Corona, this happened "on and off from March 2019 until July 2021." (*Id.* at 33, ¶ 60.) Corona was also afraid that Del Rio would assign her to certain beats "out of spite." (*Id.* at 34, ¶ 62 (quoting Corona Dep. 208:4–16).) For example, Beat 219 in particular was considered "less safe than other beats." (*Id.* at 36, ¶ 65.) However, "every ACO has been assigned this beat," including Corona before and after the alleged February 2018 sex assault. (*Id.*) Based on the record before the Court, it is not clear when, or how often, Corona was assigned to "bad beats" in the aftermath of making her reports.

6

Between 2019 and 2021, Watson occasionally dispatched Corona to assignments outside of her beat. (*Id.* at 36, ¶ 66.) This happened approximately five times, though responding to calls outside of assigned beats was considered part of Corona's job duties. (*Id.* at 36, ¶¶ 66–67.) There are many reasons why an ACO might be assigned outside their beat, including that another ACO needed assistance, was incapacitated, or if the originally assigned ACO was preoccupied when the call came in. (*Id.* at 37, ¶ 68.)

In June 2020, the OIG concluded its investigation of Corona's allegations. (*Id.* at 38, ¶ 71.) As a result of the investigation, the OIG determined, among other things, that Del Rio had violated EEO Policy because he did not report the sexual assault even though he was aware of it. (*Id.* ¶ 72.) The OIG also concluded that Caballero had sexually assaulted Corona. (*Id.* at 39, ¶ 75.) Caballero was fired. (*Id.* at 40, ¶ 79.) Del Rio was suspended for seven days. (*Id.* at 40, ¶ 78.) Del Rio grieved that discipline through his Union, and pursued arbitration to reverse his suspension, but was unsuccessful. (Defs.' SOAF at 2, 5, ¶¶ 2, 5.)

"On March 5, 2021, Corona filed a charge of discrimination with the United States Equal Employment Opportunity Commission. ("EEOC")." (Pl.'s SOF at 5, ¶ 5.) On September 24, 2021, the EEOC issued Corona with a right to sue letter. (*Id.*) Corona filed this lawsuit against the City and Del Rio on December 21, 2021. (*Id.* at 5, ¶ 6.)

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is 'material' if it is one identified by law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). If a reasonable jury, when viewing the record and all reasonable inferences drawn from it in the light most favorable to the nonmovant, could return a verdict for the nonmovant, then a genuine dispute of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the Court "construe[s] all facts and draw[s] all reasonable inferences in the nonmoving party's favor[.]" *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citations omitted).

## ANALYSIS

### I. CORONA'S TITLE VII CLAIMS[5]

The defendants move for summary judgment on Corona's Title VII sex discrimination and retaliation claims, Counts I and II, respectively. The Court considers each in turn.

#### A. Sexual Harassment Leading to a Hostile Work Environment Under Title VII[6]

---

[5] The Court notes that the defendants' renew their motion to dismiss argument that because Corona filed her EEOC charge on March 5, 2021, any claims brought under Title VII from beyond the statutorily allowed 300 days for bringing a charge—in this case, any claim prior to May 9, 2020—are time barred. (R. 131 at 7.) The determination of whether certain allegations are time barred is immaterial to the Court's conclusions as to the Title VII claims; therefore, the Court will not address this point any further.

[6] The defendants addressed both general sex discrimination and retaliation in their briefing. (*See, e.g.*, R. 131 at 6.) Corona addressed the retaliation claim in her response, and sex discrimination in the context of her hostile work environment claim. (*See, e.g.*, R. 135 at 3). Sexual harassment hostile work environment claims require proving slightly different elements than that of a general sex discrimination claim. *See Anderson v. Street*, 104 F.4th 646, 652 (7th Cir. 2024) (describing standard for sexual harassment hostile work

8

Title VII prohibits discrimination by employers against employees "because of their 'race, color, religion, sex, or national origin.'" *Trahas v. Northwestern Univ.*, 64 F.4th 842, 853 (7th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). "This prohibition on discrimination also reaches the creation of a 'hostile or abusive work environment . . . permeated with discriminatory intention, ridicule, and insult.'" *Id.* (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)). There are four elements to a hostile work environment claim: "(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe and pervasive; and (4) there is a basis for employer liability." *Id.* (citing *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1115–1116 (7th Cir. 2022)). On the first element, "the plaintiff must show that the alleged harassment was both subjectively and objectively so severe or pervasive that it altered the conditions of [her] employment. In other words, the environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Yanick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) (citations and quotations omitted)). Courts will "not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating." *Id.* at 544.

---

environment claim versus sex discrimination claim using *McDonnell Douglas* framework). To the extent Corona intended to raise a general sex discrimination claim in addition to her claims of a hostile work environment as a result of sexual harassment, that claim is waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

For reasons that will become clear, the Court's analysis of Corona's sexual harassment hostile work environment claim begins and ends with the "severe and pervasive element." *See, e.g.*, *Anderson*, 104 F.4th at 652 (affirming grant of summary judgment because there was "no triable issue of fact on the third element."). In considering whether the purported harassment was "severe or pervasive enough to create a hostile work environment," *Hoekstra v. Ford Motor Co.*, No. 16 CV 09564, 2024 WL 3519986, at *4 (N.D. Ill. July 24, 2024), the Court must assess whether the alleged conduct "alter[ed] the conditions of employment." *Anderson*, 104 F.4th at 652. When determining whether the conduct rises to such a level, "courts consider the totality of the circumstances[.]" *Scaife*, 49 F.4th at 1116 (citing *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013)). Specifically, this includes "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim." *Id.*

Corona also "must show that the challenged conduct had a sexual character or purpose." *Hoekstra*, 2024 WL 3519986, at *4. In addition, "[t]he Seventh Circuit instructs courts to 'assume employees are generally mature individuals with thick skin that comes from living in the modern world.'" *Id.* (quoting *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018)). "[O]ff-color comments, isolated incidents, teasing, and other unpleasantries are not enough for a Title VII sexual harassment claim." *Anderson*, 104 F.4th at 652 (quotations and citations omitted). Ordinarily,

10

"[w]hether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury. If a reasonable jury could find that the conduct was severe or pervasive, then the claim must go to trial." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) (quotations and citations omitted). However, that question can be removed from the jury's purview at the summary judgment stage if "the court . . . determine[s] that no reasonable jury could find the conduct at issue severe or pervasive." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018); *see also Moorehead v. KRG MS Oak Brook, LLC*, 2024 WL 4346563, at *9 (N.D. Ill. Sep. 30, 2024) (quoting *Russell v. Bd. of Trs. of Univ. of Ill.*, 243 F.3d 336, 342–43 (7th Cir. 2001) ("In order to survive summary judgment on a hostile work environment claim, a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII.")).

The defendants argue, among other things, that the alleged harassment Corona suffered was not based on her sex and that Corona's allegations, even if based on her sex, "fall short of the type of conduct which courts have found to be severe or pervasive harassment." (R. 131 at 11–12.) Corona counters, as a general principle, that it is "hard to conceive of a more severe sexual topic than sexual assault"; she also asserts that the conduct was pervasive because Corona was forced to partner with Caballero multiple times and stand near him during shift change and roll call, and that over the course of two years, her co-workers gossiped openly about the sexual assault allegations. (R. 135 at 6–7.) Corona further argues that her assignments to

11

the "least safe, objectively worst beat," and the "snitch memes" also contributed to the pervasive nature of the harassment. (*Id.* at 7.)

Here, even viewing the evidence in Corona's favor, no reasonable jury could find a hostile work environment based on sexual harassment. First, the evidence does not support Corona's assertion that she was forced to partner with Caballero multiple times; Corona testified that, after the assault in February 2018 and before she reported the assault to her employer, she was partnered with Caballero only twice: once for a full shift, and once for a "partial" shift. (Corona Dep. at 43:12–44:17). After that, Corona requested not to be partnered with Caballero, which was honored. (*Id.* at 44:18–45:2.) Corona's assertion that she called off work because she was "scheduled to be Caballero's direct partner several times in 2018" (Pl.'s SOF at 22, ¶ 28), is also not supported in the record. Corona's cited portions of her deposition do not show that she was in fact partnered with Caballero and had to call off as a result; the deposition testimony reflects that she called off to *avoid* the *possibility* of being partnered with Caballero, but there is no evidence that she was in fact partnered with Caballero. This is, therefore, consistent with her statement that they only were partnered twice post-February 2018 and is insufficient to serve as the basis for Title VII liability for a hostile work environment based on sexual harassment.

Second, as for the allegation that Corona had to "stand side by side her sexual assaulter during shift change and roll call for nearly two years until he was finally terminated," (R. 135 at 7), this is not supported by any facts in the record. Instead, Corona relies on conclusory statements made in the closing argument of the

arbitration proceedings against Del Rio. (*Id.* (citing Pl.'s SOF at 44, ¶ 4).)[7] It is well-settled that closing arguments are not evidence. *Denius v. Dunlap*, 330 F.3d 919, 928–29 (7th Cir. 2003) (citing *Rastafari v. Anderson*, 278 F.3d 673, 690 (7th Cir. 2002)). This too cannot serve as the underpinning of her Title VII claim.

Third, the last two categories of incidents in Corona's list—that Corona was assigned to "bad" beats and that she believed she was targeted with "snitch memes"—do "not have a sexual character or purpose" and therefore "they cannot support a claim of sex discrimination." *Hoekstra*, 2024 WL 3519986, at *4; *see also Mercer v. Cook Cnty., Ill.*, 527 Fed. Appx. 515, 519, 522 (7th Cir. 2013) (unpub.) (holding that a comment about having a "bullet with your name on it" was not connected to the plaintiff's sex). Here, there is no evidence in the record that would support a jury concluding that the memes or beat assignments were "offensive, sexual in nature, or included comments about [Corona's] sex." *Id.* These incidents fail to support Corona's Title VII claim for hostile work environment based on sexual harassment.

That leaves Corona's argument that she was "said to be ruining her supervisor's life on several occasions simply because she reported being sexually assaulted" and that her assault was "routinely, and openly, discussed from February

---

[7] Though the citation in Corona's response brief includes a number of paragraphs from her statement of facts, the only paragraph—being generous as to Corona's interpretation of what a "paragraph" is under Local Rule 56.1—that is possibly applicable to Corona's assertion about standing near Caballero is paragraph 4. (*See* R. 138 ¶ 4(u) (stating that Del Rio allowed "a sexual assaulter to continue to work with and possibly prey on his victims for another year.") (citations and quotations omitted).) Paragraph 4 cites to the closing argument in the arbitration proceeding against Del Rio which is not appropriate evidence. The remaining paragraphs cited for the proposition do not in fact support it and therefore are disregarded. *See Stevo*, 662 F.3d at 886–87.

2019 to July 2021 by her supervisors and coworkers." (R. 135 at 7.) Even considering these comments in totality, along with the other evidence in the record, this does not meet the high bar for proving a hostile work environment. First, the conduct was infrequent. As mentioned, there is no evidence to support Corona's claim this conduct consistently happened over the course of a more than two-year period. Rather, the evidence is that shortly after Corona's report of her sexual assault in February 2019, comments were made by Allison to Pfeffer that he felt "[the assault] should not have been brought to Animal Control" and that he was unhappy that bowling nights no longer took place. (Pl.'s SOF at 27, ¶ 42 (citing Pfeffer Dep. at 35:2–20.) Allison also commented, outside of Corona's presence, that Corona was "only calling it rape because [she] regret[ted] it." (Corona Dep. at 72:9–18.) Corona testified that "several comments" were made to that affect, but she does not identify by whom, whether it was said in her presence or to others, or when, (*id.* at 69:24–70:7), and there is no evidence in the record to fill in those gaps. In addition, Corona alleges that nearly two years after Allison's initial comments, he remarked to her that "what happens between adults should be handled." (*Id.* at 73:24–74:4.) Based on the lapse in time between comments, and the fact that the record only substantiates two comments, these are isolated incidents that do not give rise to a hostile work environment claim. *See Anderson*, 104 F.4th at 652 (describing that inappropriate touching that occurred three or four times and being called "a bitch" once were isolated incidents that did not rise to the level of severe or pervasive conduct required); *see also Swyear*, 911 F.3d at 882 (quoting *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir.

14

2000) (acts that are "few and far between [ ] typically will not be severe enough to be actionable in and of themselves.")).

The evidence also shows that Corona did not directly witness any conversations where Del Rio was discussing her assault with others, or where her co-workers were discussing her assault at all. (Corona Dep. at 102:7–104:3.); *Barrett v. Ill. Cmty. College Dist.*, No. 515, 2019 WL 3554109, at *9 (N.D. Ill. Aug. 5, 2019) (citing *Robinson*, 894 F.3d at 828–29 ("Also relevant is whether the comments were made directly to the plaintiff or if the plaintiff heard them secondhand.")). This supports concluding that the conduct was merely offensive, not humiliating or physically threatening. *Swyear*, 911 F.4th at 881 (finding that discussions not had with the plaintiff directly, that were "merely overheard" "militates a finding that the conversations were 'merely offensive' as opposed to physically threatening or humiliating[.]"). In fact, Corona could not say for certain whether conversations about her happened *at all*; the evidence is that Corona would walk into a room and those in conversation would stop talking or walk away. (Pl.'s SOF at 31, ¶ 51 (citing Corona Dep. at 102:7–15).) She also testified that it happened "more frequently around 2019 and 2020," about bi-weekly, and around the "height of the investigation" but that it stopped around the time Caballero was fired. (*Id.* (citing Corona Dep. at 103:7–104:17).) Caballero was terminated on October 6, 2020. (*Id.* at 40, ¶ 79.) Based on this evidence, this means that from October 2020 to July 2021, no such conversations would have taken place, which limits the timeline where this conduct could have occurred by nearly a year. In other words, this evidence is speculative at best.

15

*Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[I]t is well-settled that speculation may not be used to manufacture a genuine issue of fact.").

Highlighting how Corona was not present for these alleged conversations, Pfeffer authored a declaration that she "personally observed employees within the CACC office talking about [ ] Corona's sexual assault allegations[.]" (R. 134-6 at 1.) It is not clear what was said in these conversations, and what details, if any, made their way back to Corona; that evidence is not in the record. So, it cannot be said that this conduct was directed at Corona, even if it was supposedly about her. But in any event, bi-weekly occurrences where employees would stop talking in Corona's presence does not satisfy the high bar of severe or pervasive conduct. *Swyear*, 911 F.4th at 881.

The comments that Corona was ruining her supervisor, Del Rio's, life, also do not clear the severe or pervasive high bar. Corona testified that Del Rio told Pfeffer, outside of Corona's presence, that Corona was "ruining his life" less than five times over the relevant time period. (Pl.'s SOF at 51, ¶ 53 (citing Corona Dep. 82:17 – 83:8).) Corona also admitted that the statements were not directed toward her gender, but rather her "as a person." (Corona Dep. 83:4–19.) Pfeffer's declaration states that Del Rio would make comments such as "why is she doing this to me" or "why is she making this up," in reference to Corona (R. 134-6 ¶ 8); at her deposition, Pfeffer testified that she could only recall one, maybe two times where this happened. (Pl.'s SOF at 51, ¶ 53; *see also* Pfeffer Dep. at 41:19–42:10.) No reasonable jury could conclude that evidence of one or two comments, not connected to Corona's sex, nor made directly to Corona, even when considered with a few other off-hand comments already discussed,

16

is sufficiently severe or pervasive. Certainly, the behavior is inappropriate. But that is not enough under Seventh Circuit precedent. *See Anderson*, 104 F.4th at 652. ("While unfortunate, such . . . isolated incidents . . . and other unpleasantries are not enough for a Title VII sexual harassment claim.") (citations and quotations omitted)).

As for whether any of this conduct unreasonably interfered with Corona's ability to do her job, the evidence in the record is that Corona sought mental health treatment between May 31, 2019 to September 20, 2019 for a number of issues, including the sexual assault and concern about fallout from work. (R. 136-11.) She also sought mental health treatment in January 2021. (R. 136-1 at 35:3–7.) It is not clear from the record whether additional treatment was sought between those times. Corona also alleges she suffered panic attacks and called off work. (Defs.' SOAF, at 25 ¶ 26.) A jury could conclude that the effect on Corona's mental health interfered with her ability to do her job. But while the evidence could support that inference, given that this is a totality of the circumstances analysis, this alone is insufficient to carry the day on Corona's hostile work environment sexual harassment claim.

With the foregoing in mind, because a reasonable jury could not find that Corona's work environment was sufficiently severe or pervasive as a result of sexual harassment, summary judgment in favor of the defendants on this count is appropriate. The Court need not address the remaining elements of the sex harassment hostile work environment claim.

## B.    Retaliation Under Title VII

The Court next considers the Title VII retaliation claim. "Title VII prohibits an employer from retaliating against an employee 'because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Lesiv v. Ill. Central R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021)). To avoid summary judgment, Corona "must offer evidence from which a reasonable jury could find: '(1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.'" *Id.* (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)).[8] The first element is not contested. (*See* R. 131 at 6; R. 135 at 16.)

The adverse employment action suffered must be material; such an action is defined as one "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lesiv*, 39 F.4th at 911–12 (citations and quotations omitted). While this standard is "easier to satisfy than the comparable standard for Title VII discrimination claim," a materially adverse action in the context of a retaliation claim "must rise above 'trivial harms,' such as 'petty slights or minor annoyances that often take place at work that all employees experience[.]'" *Id.* (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)). "Examples of such an action would include termination of employment, a demotion evidenced by a decrease in wage or salary, a less

---

[8] In the Seventh Circuit, a plaintiff may prevail on a Title VII retaliation claim through the "direct method," which requires proof of the above listed three elements, or the indirect method, which "refers to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)." *Lewis*, 909 F.3d at 866. Neither party refers to the indirect method when discussing Title VII retaliation, instead relying solely on the direct method. Therefore, the Court considers the evidence presented to support the Title VII retaliation claim using the direct method elements.

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008). As for the causation element, Corona "needed to offer evidence that a retaliatory motive was a 'but-for cause of the challenged employment action.'" *Lesiv*, 39 F.4th at 915 (quoting *Gracia v. SigmaTron Intl. Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (quotations omitted)).

Corona contends there were two materially adverse actions taken against her: that she was assigned to "the objectively least safe and least desirable beats" and that she was constructively discharged from her job at the CCAC. (R. 135 at 16–17.) As to the latter, Corona provides a litany of actions that she asserts contributed to her constructive discharge. (*Id.* at 17 (listing actions labeled as "collective retaliatory harassment, which resulted in [Corona's] constructive discharge, [which] also constitutes a materially adverse action.").) The Court can deal with that summarily: Corona's claim that she was constructively discharged is untimely. She raises the issue for the first time in a footnote in her summary judgment response brief, relying on precedent that allows for "claims raised for the fir[st] time in the complaint that are like or reasonably related to the allegations in the EEOC charge and grow out of the allegations may be heard by the Court." (*Id.* at 30, n. 4.) There are multiple issues with this approach. First, arguments raised for the first time in footnotes are waived.

*U.S. E.E.O.C. v. Custom Cos., Inc.*, 2007 WL 1810495 at *4 (N.D. Ill. June 21, 2007) (citing *Moriarty ex rel. Loc. Union No. 727, I.B.T. Pension Tr., & the Teamsters Loc. No. 727 Health & Welfare Tr. v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005)). But furthermore, nowhere in the operative complaint does it make *any* reference to a constructive discharge claim. (*See generally* R. 12.) An analysis of whether such a claim is related to the EEOC charge is therefore inappropriate here. The constructive discharge argument at this stage is waived and cannot serve as a materially adverse action for purposes of the retaliation.

As to the former, Corona labels her assignment to certain beats as "objectively least safe and least desirable" such that they qualify as materially adverse actions. (R. 135 at 16.) The only citations Corona relies on in support of this contention are paragraphs 12, 18, and 19 of her statement of facts; paragraph 12 states that "Del Rio admitted he would assign employees to bad beats as a form of retaliation," whereas paragraphs 18 and 19 contain numerous statements, many of which have nothing to do with Corona's assignments to certain beats. (Defs.' SOAF at 12–13, 16–21, ¶¶ 12, 18–19.) Indeed, the only other reference to bad beats in that citation is in paragraph 18, that "[p]rior to making [her] reports . . . [Corona's] supervisor did not disproportionately assign her the objectively least safe and least desirable beats[.]" (*Id.* ¶ 18); there is no reference at all in paragraph 19 to the beat assignments. None of this explains how, precisely, the beats to which Corona was assigned were unsafe, not desirable, and most importantly, materially adverse.

"Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). And yet, the Court finds itself indulging in a bit of truffle hunting to determine if, in some way, the record supports the possibility that the assignment of "bad beats" was a materially adverse action. It does not. Prior to making her reports, Corona was assigned to the precise beat she complains she was assigned to in retaliation. (Pl.'s SOF at 34, ¶ 62 (citing Corona Dep. at 208:24 – 209:3).) In fact, all ACOs were so assigned at some point or another. (*See*, *e.g.*, *id.* at 36, ¶ 65.) And it is uncontroverted that sometimes an ACO is assigned the same beat on multiple days. (*Id.* at 35, at ¶ 63.)

There is also no evidence of how often Corona was assigned to this undesired beat, and whether her job duties somehow were different than what she would have been required to perform on another beat. *Cf.*, *Lesiv*, 39 F.4th at 912 (finding that plaintiff had provided sufficient evidence that he was "singled out for an unusually dangerous work assignment[.]"). Absent such proof, no reasonable jury could conclude that Corona has met her burden of showing that these beats were materially adverse. To the contrary, the parties do not point to any evidence that suggests that the work Corona performed when on the "bad beats" was somehow different than any other. Her job responsibilities were not significantly altered, she "was not required to work extra hours, did not suffer any loss of pay and was not disciplined for failing to complete her work." *See Lapka*, 517 F.3d at 986. In addition, in 2019 after Corona made her reports, she worked several different beats, and this practice resumed in 2021 when COVID restrictions were alleviated (Corona Dep. at 109:14–110:6.) As

21

such, the assignments of these particular "bad beats" do not qualify as materially adverse actions. Because Corona cannot support her allegations of materially adverse actions, her retaliation claim under Title VII fails and summary judgment for the defendants is proper. The Court need not address the element of causation. *See, e.g.*, *Poullard v. McDonald*, 829 F.3d 844, 855 – 59 (7th Cir. 2016) (rejecting that the asserted adverse actions could meet the Title VII retaliation standard and affirming grant of summary judgment on that basis).

## II.  CORONA'S EQUAL PROTECTION CLAIM PURSUANT TO THE FOURTEENTH AMENDMENT

Summary judgment is also appropriate for the defendants on Count III, Corona's claim of sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[9] "Discrimination cases brought under § 1983 are governed by the same legal standards as those brought under Title VII." *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021). Because Corona's Title VII sex discrimination hostile work environment claim "does not prevail, her § 1983 discrimination claim also does not survive summary judgment." *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1007 (7th Cir. 2018).

---

[9] The defendants argue that Corona also attempted to "bring a retaliation claim under the Fourteenth Amendment against Del Rio." (R. 131 at 25.) In her amended complaint, Corona asserted that Del Rio "deprived [her] of her federally protected rights under the Equal Protection Clause of the Fourteenth Amendment because of sex . . . and then subjecting her to retaliation." (R. 12 ¶ 62.) To the extent this was meant to serve as a retaliation claim under § 1983, such a claim is not legally cognizable. *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004).

### III.  CORONA'S FIRST AMENDMENT RETALIATION CLAIM

The defendants also move for summary judgment on Corona's First Amendment retaliation claim, Count IV. It is well established that public employees do not check their First Amendment rights at their government employer's door. *Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011). For a public employee like Corona, she must show that "'(1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action' against her." *Sweet v. Town of Bargersville*, 18 F.4th 273, 277–78 (7th Cir. 2021) (quoting *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009)). The defendants assert that Corona "cannot establish any of the elements of First Amendment retaliation." (R. 131 at 26.)

Typically, the first step in a public employee First Amendment retaliation analysis is to determine whether the speech was constitutionally protected; this is a question of law. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (citing *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2016)). However, the Court need not reach this question because based on the facts before it, Corona cannot show that she suffered a deprivation—*i.e.*, an adverse action— likely to deter her from exercising her First Amendment rights even if her speech was protected.

It is true that "[a] § 1983 retaliation claim does not require an adverse action within the same meaning as other anti-discrimination statutes." *Hutchins*, 661 F.3d at 956 (citing *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004)). Corona "need only show that [the defendants' actions] w[ere] sufficiently adverse to chill [her] free

23

speech." *Id.*; *see also Graber v. Clarke*, 763 F.3d 888, 899 (7th Cir. 2014) ("To determine whether an action is sufficiently adverse, it must present an actual or potential danger of deterring or chilling the plaintiff's exercise of free speech.") (citations omitted)). "A campaign of petty harassment and even minor forms of retaliation, diminished responsibility, or false accusations can be actionable under the First Amendment." *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 878 (N.D. Ill. 2019) (quoting *Power v. Summers*, 226 F.3d 815, 821 (7th Cir. 2000) (quotations omitted)). But "[a] tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise[.]" *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). In other words, "[t]he question is simply whether the allegedly retaliatory action, or pattern of actions, would be sufficient to deter an ordinary person from engaging in [the] First Amendment activity in the future." *Wheeler*, 364 F. Supp. at 878 (citations and quotations omitted).

Both parties rely on their Title VII adverse action arguments to support their respective positions on First Amendment retaliation. (*See* R. 131 at 26 ("As discussed . . . none of the events and incidents alleged by Corona[ ] are actionable."); R. 135 at 21 (incorporating Title VII arguments "relating to material adverse actions[.]").) The Court has already found that, under Title VII, the assignment of bad beats was not an adverse action. The Court reaches the same conclusion here, under the lesser § 1983 retaliation standard; even viewing the record in a light most favorable to

24

Corona, the assignment of particular beats over others would not be sufficient to deter an ordinary person from exercising their First Amendment rights. As discussed, all ACOs were assigned to the allegedly unsafe beats (Pl.'s SOF at 36, ¶ 65 (citing R.124-8 at 109:7–16 ("Bazal Dep."); Pfeffer Dep. at 78:6–79:14), and Corona worked that beat both before and after her reports regarding the sexual assault. (*Id.* at 34, ¶ 62.) Corona even admitted that while she "worked in unideal [*sic*] neighborhoods" she could not say that Del Rio assigned those "out of spite or if that's just where [she] was being placed." (*Id.* (quoting Corona Dep. 208:19–23) (quotations omitted).) On their own, no reasonable jury could conclude that the bad beats would deter an ordinary person from engaging in their First Amendment rights.

The Court also determined that the claim of constructive discharge was untimely; for the same reasons already articulated, that too cannot serve as the basis of Corona's First Amendment retaliation claim. But because a First Amendment retaliation claim can be based on "something less than a 'tangible detriment' such as an outright discharge or even a constructive discharge," *Chrzanowski v. Bianchi*, 122 F. Supp. 3d 755, 765–66 (N.D. Ill. 2015) (citations and quotations omitted), for the sake of completeness the Court considers whether the ten factors that Corona cites to in support of her constructive discharge claim would make up an actionable pattern to serve as the basis of the § 1983 retaliation charge. (*See* R. 135 at 17 (citing Pl.'s SOF at 3–8, 18 ¶¶ 1–8, 18–20) (listing contributing factors to Corona "resign[ing] from the field of work she loved[.]"). The problem once again is with the purported evidence upon which Corona relies to make her argument. As explained, the

25

statements that come from the Del Rio arbitration closing argument are not evidence. And the arbitrator's rulings in the arbitration are likewise not evidence; they are legal conclusions. *Boston v. Dart*, No. 14 C 8680, 2016 WL 5373083, at *1 (N.D. Ill. Sep. 26, 2016) (citing *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[L]egal arguments, suppositions, and conclusions of law are not 'facts.'") (citation omitted)). Nor are confirmations by a witness of statements that were made in the arbitration competent evidence. (*See* Defs.' SOAF at 7, ¶ 8 (citing to portions of the deposition transcript of Cappello where she was asked to read documents and confirm that the document said what it says); *see also Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 635 (N.D. Ill. 2012) ("Evidence that is of a permissible basis is . . . attested *testimony*, such as that found in depositions . . . .) (emphasis added); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000) ("[A] hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition.").

Finally, there are several paragraphs in the citation that consist of conclusory statements in lieu of factual statements, and which lack clear citations to the multitude of conclusions listed in the paragraph. The Seventh Circuit has been clear that district courts "may require strict compliance with their local rules." *Id.* at 528. Relevant here is Northern District of Illinois Local Rule 56.1, which governs summary judgment motions. Local Rule 56.1(a) requires moving parties to serve and file a supporting memorandum of law that complies with the requirements of 56.1(g) and a statement of material facts that complies with 56.1(d). L.R. 56.1(a)(1)–(2). Rule

56.1(d) mandates that a statement of material facts must consist of "concise numbered paragraphs" where "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." *Id.* at (d)(1)-(2). "The court may disregard any asserted fact that is not supported with such a citation." *Id.* at (d)(2). For this reason, the Court disregards paragraphs 18 and 19 for failure to comply with the Local Rules; the Court will not engage in further truffle hunting when Corona had ample opportunity to make clear what relevant facts the Court should assess to determine if there was a factual dispute. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010, 1017 (N.D. Ill. 2009) ("Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement."). As such, these assertions cannot serve as a pattern of harassment sufficient to underlie a First Amendment retaliation claim. For these reasons, summary judgment is granted to the defendants on this count.

## IV. CORONA'S ILLINOIS WHISTLEBLOWER ACT CLAIM

Finally, the Court considers Corona's IWA claim, Count VI. Under the IWA section 15(b), "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *Grady v. FCA US LLC*, No. 15 C 50012, 2017 WL 5896894, at *12 (N.D. Ill. Mar. 30, 2017) (quoting 740 ILCS 174/15(b)). To succeed, "a plaintiff must show (1) an adverse employment action by her employer, (2) was in retaliation for (3) her disclosure to a government or law enforcement agency (4) of a

27

suspected violation of an Illinois or federal law, rule, or regulation." *Franzone v. Bd. of Educ. Maercker Sch. Dist. No. 60*, No. 24 C 6285, 2025 WL 446261, at *4 (N.D. Ill. Feb. 10, 2025) (citing *Sweeney v. City of Decatur*, 79 N.E.3d 184, 188 (Ill. App. Ct. 2017)). Corona's IWA claim fails under the first element because "[u]nder the IWA, 'the employer's retaliation must constitute a materially adverse employment action and [ ] Illinois courts apply the same standard as for federal anti-retaliation statutes." *Harris v. City of Chicago*, 479 F. Supp. 3d 743, 750 (N.D. Ill. 2020) (quoting *Elue v. City of Chicago*, No. 16 C 09564, 2017 WL 2653082, at *5 (N.D. Ill. June 20, 2017)). For the reasons already discussed, Corona has not shown that materially adverse actions were taken against her in retaliation. Therefore, summary judgment is appropriate for the defendants on the IWA claim. *See Keen v. Teva Sales and Marketing, Inc.*, 303 F. Supp. 3d 690, 738–39 (N.D. Ill. 2018) (granting summary judgment on IWA claim when the plaintiff had presented "no evidence" with respect to a retaliation claim under Title VII and collecting cases holding similar). The Court will not address the parties' remaining arguments related to the IWA claim.

## CONCLUSION

The Court grants the defendants' motion for summary judgment on all counts [123]. Because the Court finds that summary judgment is proper in favor of the defendants, Corona's motion for judicial estoppel [70] is denied as moot. The Court grants the defendant's motion to file under seal [126]. Civil case terminated.

Date: March 24, 2025

_____
JEREMY C. DANIEL
United States District Judge

28